# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| JANITH SIAORT ALFORQUE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No.: 1:16-cv-00519-GBL-IDD |
| | ) |
| FANG CHEN AND GEORGE HOU | ) |
| | ) |
|     Defendants. | ) |
| | ) |

## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

Defendants Fang Chen and George Hou (collectively "Defendants"), by counsel, hereby answer the Complaint filed by Plaintiff Janith Siaort Alforque ("Plaintiff"), and file their Counterclaim against Plaintiff, as follows:

## ANSWER

The Introduction to Plaintiff's Complaint contains factual allegations which do not comport with Rule 10(b) of the Federal Rules of Civil Procedure ("FRCP"). Defendants deny all allegations contained therein to the extent a response is required, except Defendants admit that Plaintiff was employed by Defendant Fang Chen as a live-in nanny and housekeeper. Defendants further aver that the Contract between the parties speaks for itself and deny any allegations inconsistent therewith. Further answering, to the extent that the Introduction to Plaintiff's Complaint seeks legal conclusions to which no answer is required, Defendants deny same. Defendants further deny any violation, liability, or damages and deny that Plaintiff is entitled to the relief sought.

1.      Paragraph 1 of Plaintiff's Complaint seeks legal conclusions to which no answer is required and, therefore, Defendants deny same.

2.      Paragraph 2 of Plaintiff's Complaint seeks legal conclusions to which no answer is required and, therefore, Defendants deny same.

3.      Paragraph 3 of Plaintiff's Complaint is admitted to the extent that Plaintiff is a citizen of the Philippines and resides in Falls Church, Virginia under a terminated G-5 visa with an unknown residency status.

4.      Paragraph 4 of Plaintiff's Complaint is admitted.

5.      Paragraph 5 of Plaintiff's Complaint seeks legal conclusions to which no answer is required and, therefore, Defendants deny same.

6.      Paragraph 6 of Plaintiff's Complaint is admitted to the extent that Defendants had the power to control the day to day operations of their household.  Plaintiff also had some control over the day to day operations of the household without Defendants' supervision during the day. Any remaining allegations in Paragraph 6 are denied.

7.      Paragraph 7 of Plaintiff's Complaint is admitted, but Defendants did not fire, suspend, or discipline Plaintiff during her employment.

8.      Paragraph 8 of Plaintiff's Complaint is vague and seeks legal conclusions to which no answer is required and, therefore, Defendants deny same.

9.      Paragraph 9 of Plaintiff's Complaint is denied to the extent that Defendants controlled Plaintiff's work schedule.  Defendants admit that Defendants had the power to set Plaintiff's work schedule.  Any remaining allegations in Paragraph 9 are denied.

10.     Paragraph 10 of Plaintiff's Complaint is admitted to the extent that Plaintiff's pay rate and other payment requirements were established by Ms. Chen's employer, the World Bank,

in compliance with U.S. State Department guidelines, and accepted by Plaintiff before the employment commenced.  Any remaining allegations in Paragraph 10 are denied.

11.     Defendants admit that there was a contract between Plaintiff and Defendant Fang Chen for Plaintiff to work as a live-in nanny and housekeeper and that Plaintiff did work for both Defendants.  The remaining allegations of Paragraph 11 of Plaintiff's Complaint are denied.

12.     Paragraph 12 of Plaintiff's Complaint is denied.

13.     Paragraph 13 of Plaintiff's Complaint is denied.

14.     Defendants aver that the Contract between Plaintiff and Defendant Fang Chen speaks for itself and deny any allegations inconsistent therewith.  Defendants deny all remaining allegations, if any, in Paragraph 14 of Plaintiff's Complaint.

15.     Defendants aver that the Contract between Plaintiff and Defendant Fang Chen speaks for itself and deny any allegations inconsistent therewith.  Defendants deny all remaining allegations, if any, in Paragraph 15 of Plaintiff's Complaint.

16.     Paragraph 16 of Plaintiff's Complaint is denied.

17.     Paragraph 17 of Plaintiff's Complaint seeks legal conclusions to which no answer is required and, therefore, Defendants deny same.

18.     Paragraph 18 of Plaintiff's Complaint is admitted to the extent that the number of hours worked should be revealed through discovery.  Paragraph 18 of Plaintiff's Complaint is denied to the extent that Defendants owe no wages to Plaintiff, as established by documents exchanged between the parties prior to litigation.

19.     Paragraph 19 of Plaintiff's Complaint is denied.

20.     Defendants reassert and incorporate their answers to paragraphs 1-19 of Plaintiff's Complaint, as if fully set forth herein.

21.     Paragraph 21 of Plaintiff's Complaint seeks legal conclusions to which no answer is required and, therefore, Defendants deny same.

22.     Paragraph 22 of Plaintiff's Complaint is denied.

23.     Paragraph 23 of Plaintiff's Complaint is denied.

24.     Paragraph 24 of Plaintiff's Complaint is denied. Defendants deny that Plaintiff is entitled to the relief requested.

25.     Defendants reassert and incorporate their answers to paragraphs 1-19 of Plaintiff's Complaint, as if fully set forth herein.

26.     Defendants aver that the Contract between Plaintiff and Defendant Fang Chen speaks for itself and deny any allegations inconsistent therewith. Defendants deny all remaining allegations, if any, in Paragraph 26 of Plaintiff's Complaint.

27.     Defendants aver that the Contract between Plaintiff and Defendant Fang Chen speaks for itself and deny any allegations inconsistent therewith. Defendants admit that Plaintiff provided services pursuant to the Contract. Defendants deny all remaining allegations, if any, in Paragraph 27 of Plaintiff's Complaint.

28.     Paragraph 28 of Plaintiff's Complaint is denied. Defendants deny that Plaintiff is entitled to the relief requested.

29.     Defendants deny that Plaintiff is entitled to the relief requested.

30.     All allegations not specifically admitted herein are denied.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

The Complaint fails to state a cause of action against Defendant George Hou for which relief can be granted because Mr. Hou is not a party to the Contract, which is attached to the Complaint, upon which Plaintiff is alleging a breach of contract.

### Second Affirmative Defense

Without admitting that any violations of the Fair Labor Standards Act ("FLSA") have occurred, which Defendants adamantly deny, any act or omission by the Defendants with respect to the matters at issue herein was in good faith and in compliance with the FLSA and applicable regulations, and the Defendants had reasonable grounds to believe that their acts or omissions did not violate the FLSA.

### Third Affirmative Defense

The Complaint is barred by estoppel if Plaintiff among other things, under-reported her hours of work.  Defendants cannot be liable to Plaintiff for alleged hours worked by Plaintiff that were not reported to Defendants.

### Fourth Affirmative Defense

Defendants have no knowledge of, nor should they have knowledge of, any alleged uncompensated work by Plaintiff as set forth in the Complaint, and Defendants did not authorize, require, request, suffer, or permit such activity by Plaintiff.

### Fifth Affirmative Defense

Defendants are entitled to offset monies or other consideration paid or provided to Plaintiff by Defendants for periods in which Plaintiff was not engaged to work.

Sixth Affirmative Defense

Plaintiff committed fraud before and during the Contract term.


Defendants reserve the right to rely upon all other properly provable defenses which further discovery or the evidence may disclose.

## COUNTERCLAIM

## THE PARTIES

1.      Ms. Chen and Mr. Hou are a married couple legally residing in Arlington, Virginia.

2.      Upon information and belief, Plaintiff Janith Siaort Alforque is a citizen of the Philippines and resides in Falls Church, Virginia under a terminated G-5 visa with an unknown residency status.

3.      Ms. Chen sponsored Plaintiff to come to the United States in 2014 to work for Ms. Chen as a live-in nanny and housekeeper in Ms. Chen's and Mr. Hou's Virginia home under a G-5 visa.

4.      Ms. Chen employed Plaintiff under the G-5 visa program from April 21, 2014 to September 30, 2015, after which time Plaintiff abandoned her position without any prior notice and failed to respond to any of Ms. Chen's inquiries.

5.      Upon information and belief, before coming to the United States in 2014, Plaintiff was a resident of Zamboanga Sibugay in the Philippines where she lived with her family.

## PLAINTIFF LIED DURING THE HIRING PROCESS

6.      Plaintiff was referred to Ms. Chen in early 2014 as a potential G-5 visa employee candidate.

7.     During the interview process in January and February 2014, Plaintiff stated to Ms. Chen during telephone and video calls, and via e-mail that Plaintiff was a single unmarried mother and needed the position with Ms. Chen to support her only teenage daughter.  See E-mail from Plaintiff to Ms. Chen, dated February 27, 2014 (page 2), attached hereto as **Exhibit 1**. Upon information and belief, such statements were made in order to induce Ms. Chen to sponsor Plaintiff for a G-5 visa to legally work in the United States for Ms. Chen.

8.     During the interview process in January and February 2014, Plaintiff also stated to Ms. Chen during telephone and video calls, and via e-mail that Plaintiff had previously worked in China and Saudi Arabia.  See Ex. 1 (page 1).  Upon information and belief, such statements were made in order to induce Ms. Chen to sponsor Plaintiff for a G-5 visa to legally work in the United States for Ms. Chen.

9.     Ms. Chen was touched by the situation described by Plaintiff and, as a result, Ms. Chen chose to employ Plaintiff over the other candidates.  Plaintiff repeatedly thanked Ms. Chen for giving Plaintiff an opportunity to get out of poverty as she was raising a teenage daughter as a single mother.

10.     Based upon information provided by Plaintiff, Ms. Chen sponsored Plaintiff for a G-5 visa and paid for Plaintiff's airline ticket to fly from the Philippines to the Washington, D.C. area.

11.     Plaintiff also represented on her G-5 visa application to United States immigration authorities that she was a single mother with one daughter.  A redacted copy of the first page of Plaintiff's visa application is attached hereto as **Exhibit 2**.

12.     After Ms. Chen hired Plaintiff and brought her to the United States, Ms. Chen learned that Plaintiff was actually married to a man named Julius Rivera and had three children

in the Philippines, including two very young children, rather than being a single mother with one teenage child as Plaintiff had falsely represented to Ms. Chen and United States immigration authorities.

13.     Further, after Ms. Chen brought Plaintiff to the United States, Ms. Chen also learned that Plaintiff had previously worked on expired or short-term visitor visas in both China and Saudi Arabia and was banned from entering China.

## THE EMPLOYMENT CONTRACT

14.     Conditional upon the successful application for a social security number, Ms. Chen and Plaintiff entered into a "F00115 Contract for G5 Domestic Employee," dated March 2014 which was renewed in September 2014 (the "Contract").   A copy of the renewed Contract is attached hereto as **Exhibit 3**.

15.     Pursuant to Sections 2 and 3 of the Contract, the parties agreed that Plaintiff would only work 35 hours per week performing the duties of babysitting, housekeeping and cooking dinner in light of the fact that Ms. Chen's and Mr. Hou's only child attended pre-school full-time and Ms. Chen and Mr. Hou were their daughter's primary caretakers in the evening. Ex. 3.

16.     Section 12 of the Contract, which governs Termination of Employment and Departure, requires the Employee to provide at least one month's notice of termination of the Contract. Ex. 3.

17.     Further, Section 11(a)(i) of the Contract states that the Employee will be provided with transportation from the United States after termination of employment (for any reason) at no cost to the Employee, which Ms. Chen has repeatedly offered to Plaintiff after Plaintiff abandoned her position with Ms. Chen. Ex. 3.

18.     Section 11(a)(i) of the Contract also states that if the Employee's employment by the Employer terminates for any reason, the Employee will not be permitted to remain in the United States and will be required to leave the United States promptly.  Ex. 3.

## PLAINTIFF'S TYPICAL WORKDAY

19.     Ms. Chen fully performed her obligations under the Contract and instructed Plaintiff not to work more than 35 hours per week in accordance with the Contract.

20.     As such, in accordance with the Contract, Plaintiff worked no more than 35 hours per week and was annually given 30 days unpaid vacation leave, 12 days of unpaid holiday leave, and 10 days of unpaid sick leave.

21.     All of Plaintiff's timesheets with Ms. Chen, which Plaintiff signed, reflect that Plaintiff worked no more than 35 hours per week.

22.     Plaintiff's primary responsibility was assisting with the care of Ms. Chen and Mr. Hou's only daughter.

23.     As a result of Ms. Chen's and Mr. Hou's daughter being in preschool full-time and Ms. Chen and Mr. Hou being their daughter's primary caretakers in the evenings, Plaintiff generally worked no more than seven (7) hours per day for a total of 35 hours per week in accordance with the Contract.

24.     Plaintiff lived in Ms. Chen's and Mr. Hou's home and had her own bedroom and bathroom in their house that Plaintiff could lock from the inside.

25.     Plaintiff had free access to Ms. Chen's and Mr. Hou's house and their daughter's school.

26.     During most workdays, both Ms. Chen and Mr. Hou worked in their respective offices and did not supervise Plaintiff in person.  As such, Plaintiff was generally free to arrange her work and personal schedule, including visiting her friends.

27.     Plaintiff's typical workday during the week did not start until approximately 8:30 or 9:00 a.m. when Plaintiff was dropped off at the daughter's daycare with the daughter (usually she was driven there by Mr. Hou).  Mr. Hou gave the daughter breakfast and Ms. Chen got the daughter ready for daycare (although Plaintiff occasionally assisted).

28.     After drop off at daycare, Plaintiff was free to do as she pleased until approximately 4:30 or 5:00 p.m. when she picked up the daughter from daycare.  Plaintiff's only responsibility during that time was to perform light housekeeping services and some laundry.

29.     Ms. Chen keeps a very clean and tidy home so there was very little for Plaintiff to do with respect to housekeeping, and Plaintiff was instructed to not clean the master bedroom, office, or library due to privacy concerns.

30.     Further, while Ms. Chen's and Mr. Hou's daughter was at school during workdays, Plaintiff spent her time visiting her friends in the neighborhood, sometimes for up to an hour, talking on the phone with friends and family, surfing the internet using Ms. Chen's and Mr. Hou's internet connection, watching TV, listening to music, cooking her own lunches, as well as taking 'selfie' photos like the photo attached as **Exhibit 4** or posting on Facebook, examples of which are attached as **Exhibit 5**.

31.     The attached 'selfie' photograph (Ex. 4) is particularly troublesome because Plaintiff took this inappropriate photograph in the sanctuary area of Ms. Chen's and Mr. Hou's home where Ms. Chen pays tribute to her deceased mother while Plaintiff wore Ms. Chen's boots without Ms. Chen's permission.

32.     Upon returning to the home with the daughter, Plaintiff babysat the daughter and prepared dinner for the family around 6:30 p.m., although Ms. Chen cooked occasionally and they also dined out and brought food home from take-out restaurants and grocery stores.

33.     Plaintiff ate dinner at the same time at the same table with Ms. Chen and Mr. Hou.  The dishes were placed in the dishwasher, sometimes with the assistance of Ms. Chen and/or Mr. Hou.

34.     After dinner, Ms. Chen and Mr. Hou got their daughter ready for bed, including bathing her (although Plaintiff occasionally assisted), reading to her, practicing piano, and putting her to bed in her parents' bedroom where she co-slept.

35.     On weekends, Plaintiff generally did not need to babysit Ms. Chen's and Mr. Hou's daughter because Ms. Chen and Mr. Hou were usually home or took their daughter to ballet, piano, soccer, grocery shopping, and to visit friends.

### MS. CHEN & MR. HOU TREATED PLAINTIFF FAIRLY AND LEGALLY DURING HER EMPLOYMENT

36.     During Plaintiff's employment, Ms. Chen paid Plaintiff in full, net of required taxes (totaling approximately $3,000) in accordance with the Contract, often times in advance.

37.     In addition, Ms. Chen provided Plaintiff with the following, among other things:

    a.     Plaintiff's international plane ticket and courier fees (costing approximately $870);

    b.     Free food and lodging (totaling at least $10,800), even when Plaintiff's services were not required, such as when Ms. Chen and her daughter travelled overseas or while Ms. Chen's family took a vacation to Disney;

    c.     Cash gifts (approximately $300);

    d.      Clothing and shoes for every season, including all winter outerwear (totaling at least $300);

    e.      Toiletries and cosmetics;

    f.      iPad (costing approximately $370);

    g.      Transportation;

    h.      Free internet access; and

    i.      International phone calls and text messages.

38.    Ms. Chen also enrolled Plaintiff in a Kaiser Permanete health insurance plan and paid the monthly medical insurance premiums for her.

39.    Further, Ms. Chen also paid Plaintiff's out-of-pocket medical expenses, including Plaintiff's out-of-pocket dental expenses.

40.    As Plaintiff adjusted to living in the United States, Ms. Chen and Mr. Hou frequently assisted Plaintiff so that she could quickly settle in the United States and enjoy her employment.  Among other things, Ms. Chen and Mr. Hou provided this assistance by driving her around, assisting her in opening bank accounts, and dealing with relevant government agencies.

41.    For example, Ms. Chen drove Plaintiff to a local bank to open a bank account on April 26, 2014 and repeatedly advised Plaintiff to keep her account information completely confidential.

42.    When Plaintiff later incurred overdraft fees with her bank account, Plaintiff begged Ms. Chen to speak with the bank representatives to waive the fees, which Ms. Chen did as a favor to Plaintiff.  Ms. Chen and Mr. Hou frequently assisted Plaintiff in such a manner so that Plaintiff could quickly settle in the United States and enjoy her employment.

43.     As a result, Plaintiff gave Ms. Chen a handmade birthday card in which she wrote that she was "so lucky fortunate and blessed to have a employer like you," which is attached as **Exhibit 6**.

## MS. CHEN LOANED PLAINTIFF MONEY, WHICH PLAINTIFF HAS FAILED TO REPAY

44.     Ms. Chen paid Plaintiff in full, net of required taxes, including sometimes in advance.

45.     For example, when Plaintiff was able to start working for Ms. Chen on April 21, 2014 after she obtained all the proper work authorizations, Plaintiff asked Ms. Chen for a wage advance.  Plaintiff told Ms. Chen that she needed the money to pay off a loan shark from whom she had borrowed while in the Philippines.

46.     Ms. Chen kindly made a prepayment of $1,250 to Plaintiff, which Plaintiff used to open bank accounts as initial deposits as well as to wire funds via Western Union to Julius Rivera, whom Ms. Chen later learned was Plaintiff's husband.  A copy of the transfer of funds from Ms. Chen to Plaintiff is attached as **Exhibit 7**.

47.     Plaintiff subsequently asked Ms. Chen to keep prepaying Plaintiff at the end of the first working month, telling Ms. Chen that she needed at least $900 per month to support her family in the Philippines and pay off debts.

48.     Although Ms. Chen repeatedly explained to Plaintiff that the salary amount was not fixed and would depend upon the amount of Plaintiff's working hours and taxes withheld, Ms. Chen kindly agreed to keep prepaying Plaintiff with monthly payments of $900 or above, instead of recouping the initial advance all at once.

49.     Later, Plaintiff asked Ms. Chen to make additional prepayments to Plaintiff when Plaintiff had family emergencies or when Plaintiff purchased properties in her home town, which Ms. Chen agreed to do with the understanding that Plaintiff would repay Ms. Chen.

50.     To date, Plaintiff has failed to repay Ms. Chen approximately $600.

## EVENTS LEADING UP TO PLAINTIFF'S ABRUPT DEPARTURE FROM MS. CHEN'S & MR. HOU'S HOME

51.     In early July 2015, Ms. Chen took her daughter to China for a six-week period for work.

52.     Prior to traveling to China, Ms. Chen offered Plaintiff the following options:

    (i)     to continue working with Ms. Chen and the daughter and accompany them in China; or

    (ii)    to take a vacation in the Philippines to visit Plaintiff's family with Ms. Chen and Mr. Hou paying for Plaintiff's airline tickets.

53.     Plaintiff indicated that she could not work with Ms. Chen and her daughter in China because Plaintiff had worked in China on an expired visa and, as a result, she was banned from entering China by Chinese authorities.

54.     Upon information and belief, Plaintiff had similarly worked on a short-term visitor visa in Saudi Arabia in 2009-2010.  Plaintiff only left Saudi Arabia due to her second pregnancy.

55.     Plaintiff also did not want to return to the Philippines and asked Ms. Chen if she was terminating Plaintiff's employment, which Ms. Chen said she was not.

56.     Plaintiff instead chose to take personal leave and stay in the Washington D.C. area during which time Ms. Chen provided Plaintiff with free lodging and food while Ms. Chen and her daughter were in China.

14

57.     When Ms. Chen and her daughter returned to the United States in early September 2015, Plaintiff happily insisted on going to the airport to welcome them back.  Shortly thereafter though, Plaintiff overheard Ms. Chen and Mr. Hou talking about potential relocation to Asia, and Plaintiff again asked Ms. Chen if she was terminating Plaintiff's employment, which Ms. Chen said she was not.

58.     Thereafter, Plaintiff became very unhappy because Plaintiff thought that her G-5 visa employment might be terminated and she would have to leave the United States.

59.     On the night of September 30, 2015, Plaintiff told Ms. Chen that she was following Ms. Chen's advice and purchasing another income property in Philippines that would be managed by one of Plaintiff's brothers.  That property would be the third property that Plaintiff purchased since she started working for Ms. Chen.  Ms. Chen and Plaintiff had a good conversation and laughed.

60.     The next morning, on October 1, 2015, however, while Ms. Chen was at work, Plaintiff had someone call the Arlington Police Department to request a criminal investigation at Ms. Chen's and Mr. Hou's home.  When the police came to the house, Plaintiff asked them to escort her away from the house, stating that Plaintiff was being held against her will, even though Plaintiff was free to leave the house at any time and did leave the house multiple times daily.  No police report was issued.

61.     Upon information and belief, Plaintiff subsequently applied for a U-visa misrepresenting that she is a victim of criminal activity in an attempt to remain in the United States based on a fabricated story.

62.   Plaintiff left Ms. Chen and Mr. Hou's house and abandoned her position without any prior notice or discussion and has not returned since, leaving Ms. Chen and Mr. Hou in an unexpected lurch.

63.   After Plaintiff's abrupt departure, Ms. Chen reached out to Plaintiff and her family via Skype and e-mail, puzzled by Plaintiff's dramatic departure and concerned about her safety.  Plaintiff, however, has never responded to Ms. Chen.

64.   As a result, Plaintiff failed to provide at least one month's notice of termination of the Contract, as required by the Contract.

65.   Further, when Plaintiff abruptly left Ms. Chen's and Mr. Hou's house, Plaintiff took approximately $500 in cash from Ms. Chen and Mr. Hou, some of Ms. Chen's clothing, and documents without Ms. Chen's and Mr's Hou permission.

66.   Since Plaintiff's unexpected departure from Ms. Chen's and Mr. Hou's house, Ms. Chen and Mr. Hou have decided not to replace Plaintiff and have taken care of their daughter and their home without assistance.

67.   Plaintiff subsequently filed a complaint with the World Bank, Ms. Chen's employer, in which Plaintiff misrepresented her working hours and working conditions.  After a month-long investigation, the World Bank Office of Business & Ethics Conduct dismissed Plaintiff's claims.

68.   In accordance with the Contract, Ms. Chen has repeatedly offered to pay for Plaintiff's return to the Philippines to reunite with her family, but Plaintiff has refused this offer in order to remain in the United States on a terminated G-5 visa in violation of the Contract.

## COUNT I - BREACH OF CONTRACT
### (failure to provide notice)

69.   Defendants restate and incorporate Paragraphs 1 through 68 herein.

70.     The Contract between Plaintiff and Ms. Chen was a binding contract supported by consideration, and Ms. Chen fully performed her obligations under the Contract.

71.     Plaintiff materially breached the Contract by failing to provide any notice prior to abandoning her employment with Ms. Chen.

72.     As a result of Plaintiff's breach, Defendants have suffered damages.

WHEREFORE, Defendants respectfully requests that this Court enter judgment against Plaintiff in an amount not less than $50,000, and for such other and further relief that this Court deems proper.

## COUNT II - BREACH OF CONTRACT
### (failure to repay advanced wages)

73.     Defendants restate and incorporate Paragraphs 1 through 68 herein.

74.     At various times during Plaintiff's employment with Ms. Chen, Plaintiff requested that Ms. Chen advance Plaintiff her wages in exchange for Plaintiff providing services of equivalent value to Defendants or otherwise repaying Ms. Chen these monies.  Ms. Chen agreed to advance Plaintiff's wages on these terms, thus forming an oral contract.

75.     The contract between Plaintiff and Ms. Chen was a binding contract supported by consideration, and Ms. Chen fully performed her obligations under the contract.

76.     Plaintiff materially breached the contract by failing to repay Ms. Chen for wages advanced to Plaintiff by Ms. Chen or by providing Ms. Chen services in exchange for the advanced wages.

77.     As a result of Plaintiff's breaches, Defendants have suffered damages.

WHEREFORE, Defendants respectfully requests that this Court enter judgment against Plaintiff in an amount not less than $50,000, and for such other and further relief that this Court deems proper.

## COUNT III – UNJUST ENRICHMENT
### (in the alternative to Count II)

78.     Defendants restate and incorporate Paragraphs 1 through 68 herein.

79.     Ms. Chen advanced wages to Plaintiff, per Plaintiff's requests, on various dates.

80.     Plaintiff promised to repay Ms. Chen the advanced payments and/or provide services to Ms. Chen in exchange for the advanced wages.

81.     Plaintiff failed to fully repay Ms. Chen the advanced wages or provide Ms. Chen with services of equivalent value.

82.     As a result, Plaintiff received an overpayment in wages from Ms. Chen in the amount of approximately $600 (the "Overpayment").

83.     Ms. Chen conferred a benefit on Plaintiff by overpaying Plaintiff.

84.     Plaintiff was aware that Ms. Chen was conferring this benefit on Plaintiff with the expectation that the money would be repaid to Ms. Chen and/or that Plaintiff would provide services to Ms. Chen in exchange for the benefit.

85.     Plaintiff accepted the benefit conferred by Ms. Chen, but then failed to fully repay Ms. Chen or provide services to Ms. Chen in exchange, resulting in the Overpayment of Plaintiff's wages.

86.     By retaining the Overpayment, Plaintiff has been unjustly enriched.  It would be inequitable to allow Plaintiff to retain the Overpayment.

87.     Defendants are entitled to recover the Overpayment paid to Plaintiff.

88.     Defendants will be irreparably harmed if Plaintiff spends, dissipates, or otherwise uses the Overpayment to which Defendants are rightfully entitled.

WHEREFORE, Defendants respectfully request that this Court enter judgment against Plaintiff for compensatory damages in the amount of $600 plus post-judgment interest and grant such other and further relief that this Court deems proper.

## COUNT IV – FRAUD

89.    Defendants restate and incorporate Paragraphs 1 through 88 herein.

90.    During the interview process for the position in Ms. Chen's and Mr. Hou's home in January and February 2014, Plaintiff misrepresented to Ms. Chen during telephone and video calls, and via e-mail, that she was a single unmarried mother and needed the position with Ms. Chen to support her only teenager daughter.

91.    During the interview process for the position in Ms. Chen's and Mr. Hou's home in January and February 2014, Plaintiff also misrepresented to Ms. Chen during telephone and video calls, and via e-mail, that Plaintiff had previously worked in China and Saudi Arabia but failed to disclose that she had worked illegally in both China and Saudi Arabia on expired or short-term visitor visas, and that she was banned from reentering China by Chinese officials.

92.    Plaintiff made the foregoing misrepresentations of material fact intentionally and knowingly with the intent to mislead Ms. Chen.

93.    The foregoing misrepresentations were knowingly false at the time they were made.

94.    Plaintiff made these material misrepresentations of fact in order to induce Ms. Chen to hire Plaintiff and sponsor Plaintiff for a G-5 employment visa to work legally in the United States.

95.    Ms. Chen reasonably and detrimentally relied upon Plaintiff's misrepresentations when Ms. Chen agreed to hire Plaintiff, sponsor Plaintiff for a G-5 visa, enter into the Contract

with Plaintiff, and pay for Plaintiff's airline ticket to fly from the Philippines to the Washington, D.C. area.

96.     Plaintiff's conduct constitutes willful misconduct, malice, fraud, wantonness, oppression and/or such gross indifference, and recklessness as to amount to a wanton or willful disregard of the rights of Defendants.  Therefore, Defendants are entitled to an award of punitive damages.

97.     As a direct and proximate cause of Plaintiff's misrepresentations, Defendants suffered damages of at least $50,000, consisting of the costs Ms. Chen incurred by employing Plaintiff based on Plaintiff's misrepresentations.

WHEREFORE, Defendants respectfully requests that this Court enter judgment against Plaintiff in an amount not less than $50,000, plus costs and attorneys' fees, post-judgment interest, punitive damages, and for such other and further relief that this Court deems proper.

## COUNT V – CONVERSION

98.     Defendants restate and incorporate Paragraphs 1 through 97 herein.

99.     On or about October 1, 2015, Plaintiff took the following items, among other things, belonging to Ms. Chen and Mr. Hou without permission:

      a.   Important documents;

      b.   Cash (approximately $500); and

      c.   Ms. Chen's clothing.

100.     Defendants had a right to possession of these items, which were improperly taken by Plaintiff.

101.    Plaintiff's conduct in taking Defendants' possessions constitutes the wrongful exercise and/or assumption of authority over such items and deprives or is otherwise inconsistent with Defendants' right to possession of such items.

102.    Plaintiff's conduct constitutes conversion.

103.    Plaintiff's conduct constitutes willful misconduct, malice, fraud, wantonness, oppression and/or such gross indifference, and recklessness as to amount to a wanton or willful disregard of the rights of Defendants.  Therefore, Defendants are entitled to an award of punitive damages.

104.    As a result of Plaintiff's conversion of Defendants' possessions, Defendants have been damaged.

WHEREFORE, Defendants respectfully requests that this Court enter judgment against Plaintiff in an amount not less than $50,000, post-judgment interest, punitive damages, and for such other and further relief that this Court deems proper.

Respectfully submitted,

FANG CHEN AND GEORGE HOU

By Counsel

Karen A. Doner (VSB No. 40999)
Roth Doner Jackson, PLC
8200 Greensboro Drive, Suite 820
McLean, Virginia 22102
Telephone:  (703) 485-3537
Facsimile:   (703) 485-3525
kdoner@rothdonerjackson.com
*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of June 2016, I caused a copy of the foregoing document to be served via the Court's ECF system, upon:

Mary J. Craine Lombardo
STEIN SPERLING BENNETT
DEJONG DRISCOLL PC
25 West Middle Lane
Rockville, Maryland 20850
(301) 340-2020
(301) 354-8126 (fax)
mlombardo@steinsperling.com

*Counsel for Plaintiff*

Karen A. Doner

22